UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Transcendence Treatment Center, LLC and Dr. Mohammed T. Sandhu,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Ascension Recovery Services, LLC.,<br><br>　　　　　　　　　　　　Defendant. | Civil Action No. 2:23-cv-6061-BHH<br><br>**Opinion and Order** |

Now before the Court is Defendant Ascension Recovery Services, LLC's ("Defendant" or "Ascension") motion to dismiss the first, third, and fourth causes of action of Plaintiffs Transcendence Treatment Center, LLC's ("Transcendence") and Dr. Mohammed T. Sandhu's ("Dr. Sandhu") (collectively, Plaintiffs") complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 6.) Defendant argues that Plaintiffs' tort causes of action[1] for negligence/gross negligence, negligent misrepresentation and, in the alternative, breach of fiduciary duty "are barred by South Carolina law under the economic loss rule because they are based exclusively on duties and obligations which are *directly derived from, and dependent on, the terms of the [parties'] Consulting Agreement*." (*Id.* at 2 (emphasis in original).) Defendant additionally argues that Plaintiffs' negligent misrepresentation claim should be dismissed because it

---

[1] The only other claim asserted in Plaintiffs' complaint is Plaintiffs' second cause of action for breach of contract. (ECF No. 1 at 13-14.) Defendant does not seek dismissal of this claim.

is based on statements about future events. (*Id.* at Section B.) Plaintiffs filed a response in opposition (ECF No. 11), and Defendant filed a reply. (ECF No. 12.)

The Court has carefully considered the complaint, Defendant's motion, and the parties' briefs. For the reasons set forth herein, the Court grants Defendant's partial motion to dismiss Plaintiffs' tort claims alleged in the complaint.

## BACKGROUND

The facts viewed in the light most favorable to Plaintiffs are as follows. Transcendence is a South Carolina limited liability company, and its sole member is Dr. Sandhu, a citizen and resident of the State of New Jersey. (ECF No. 1 ¶¶ 1-2.) Ascension is a behavioral health consulting firm that holds itself out as specializing in consulting and implementing substance use disorder treatment programs across the nation. (*Id.* ¶ 8.) In 2019, Dr. Sandhu "engaged Ascension regarding [Ascension's] consulting and operations services" with the aim to obtain Ascension's consulting services to "open[] a rehabilitation facility for drug addiction" in South Carolina. (*Id.* ¶ 11.) On July 9, 2019, Dr. Sandhu and Ascension entered into a consulting agreement (hereinafter, the "Agreement"), "whereby Ascension agreed to provide consulting and operational services to Dr. Sandhu and his drug rehabilitation facility (Transcendence) in exchange for certain fees and costs." (*Id.* ¶ 12.) Attached to the complaint is a copy of the Agreement between the parties. (ECF No. 1-1.)

Pursuant to the Agreement, Ascension was required to prepare a "report detailing multiple distinct investment opportunities within the addiction recovery industry," which included financials, projections, estimated status-up costs, an illustrative project timeline, and "recommendations and opinions on key issues impacting each opportunity such as

2

. . . federal/state/local regulations." (ECF No. 1 ¶ 14.) In addition, Ascension was required to produce a business plan (the "Business Plan") and revenue projections for Dr. Sandhu. (*Id.* ¶¶ 21-22.)

The Business Plan that Ascension developed and provided for Transcendence states that "78% of Transcendence's patients will carry Medicaid insurance," and Ascension represented that Transcendence would receive somewhere between 76-79% of its revenue from Medicaid. (*Id.* ¶¶ 23-24.) Pursuant to the Business Plan, Ascension assisted Dr. Sandhu in preparing and submitting the new Medicaid provider application for Transcendence. (*Id.* ¶ 32.) However, Medicaid rejected Transcendence's enrollment application. (*Id.* ¶ 33.)

In February 2021, Dr. Sandhu discovered that the South Carolina's Department of Health and Human Services had issued a moratorium on the enrollment of rehabilitative behavioral health services since February of 2015. (*Id.* ¶¶ 35, 37-39.) Ascension never communicated to Dr. Sandhu or anyone else at Transcendence that it would be ineligible for Medicaid revenue. (*Id.* ¶¶ 37-39.) Dr. Sandhu raised this issue with Ascension, and in response, Steve Burton, an Ascension representative or principal, stated that he "believe[s] when the decision was made to launch in Charleston, South Carolina we fully discussed that South Carolina was not a Medicaid expansion state, therefore, Medicaid dollars would not be easy to come by." (ECF No. 1-3 at 2.) Mr. Burton also stated that "[w]hen producing proformas, we often use Medicaid as a baseline . . . [t]he Medicaid rates and payer mix on our proforma give the proforma a very conservative projection, one in which our clients can easily perform past with commercial reimbursement. We also work in other states with Medicaid moratorium's [sic], and simply utilize commercial

3

payers to bring in revenues." (*Id.*) Finally, Burton stated that "[g]iven your geographic location, the loss of Medicaid is definitely not a show stopper." (*Id.*) Plaintiffs proceeded to open and operate Transcendence without Medicaid enrollment. (ECF No. 1 ¶ 40.)

Shortly thereafter, Ascension attempted to terminate the Agreement on the grounds that Dr. Sandhu had breached his payment obligations, and then it ceased all communications and consulting services with Plaintiffs. (*Id.* ¶¶ 41, 43-44.) Dr. Sandhu alleges that he met all payment obligations owed under the Agreement. (*Id.* ¶ 42.) On or around July 7, 2023, Transcendence closed because, according to Plaintiffs, it could not "generate sufficient revenue without the promised Medicaid funding." (*Id.* ¶ 49.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id.*  In addition to the complaint itself, the Court may consider "documents attached to the complaint, . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009). The Court may also "take judicial notice of matters of public record." *Id.*

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

4

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## **DISCUSSION**

Defendant seeks dismissal of Plaintiffs' negligence causes of action (first and third causes of action) and breach of fiduciary cause of action (fourth cause of action) for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Specifically, Defendant argues that these tort claims must be dismissed because they are barred by the economic loss doctrine.

### I.   **Negligence/Gross Negligence & Negligent Misrepresentation**

To bring a successful negligence claim in South Carolina, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached the duty by a negligent act or omission; (3) the defendant's breach was the actual or proximate cause of the plaintiff's injury; and (4) the plaintiff suffered damages."

5

*Doe v. Marion*, 645 S.E.2d 245, 250 (S.C. 2007). Gross negligence is "the failure to exercise slight care." *Steinke v. S.C. Dep't of Labor, Licensing & Regulat.*, 520 S.E.2d 142, 153 (S.C. 1999). The South Carolina Supreme Court has also defined gross negligence as "the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Id.* Gross negligence "is a relative term and means the absence of care that is necessary under the circumstances." *Id.* (quoting *Hollins v. Richland Cty. Sch. Dist. One*, 427 S.E.2d 654, 656 (S.C. 1993)). To establish liability for negligent misrepresentation, a plaintiff must show (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation. *Sauner v. Pub. Serv. Auth. of SC*, 581 S.E.2d 161, 166 (2003) (quoting *AMA Mgmt. Corp. v. Strasburger*, 420 S.E.2d 868, 874 (Ct. App. 1992)). Thus, "[a]n essential element [to these claims] is the existence of a legal duty of care owed by the defendant to the plaintiff." *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 81 (S.C. 1998). The existence and scope of the duty are questions of law for the court to determine. *Ballou v. Sigma Nu Gen. Fraternity*, 352 S.E.2d 488 (Ct. App. 1986).

"An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 714 (S.C. 2003). The determination of whether a plaintiff may

6

maintain a negligence action for an economic loss against a defendant depends on the source of the duty allegedly breached. *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995). The economic loss doctrine bars a negligence claim "where duties are created solely by contract." *Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730, 737 (1989). Therefore, a negligence action cannot be brought when the parties are in privity of contract, unless "there is a special relationship between the alleged tortfeasor and the injured party not arising in contract." *Tommy L. Griffin Plumbing & Heating Co.*, 463 S.E2d at 88.

Here, the complaint alleges that "Defendant owed Plaintiffs a duty to provide reliable, expert, professional, and industry specific advice and consultancy services related to developing a substance use disorder and drug rehabilitation program and business." (ECF No. 1 ¶ 51.)  In an attempt to show a "special relationship" between the parties, and a breach of a duty arising outside of the parties' Agreement, Plaintiffs argue that Defendant had "a duty under industry or professional standards to exercise due diligence and provide correct advice to [its] client and potentially others." (ECF No. 11 at 11-14.)

However, Plaintiffs' alleged industry standard exception to the economic loss doctrine has already been rejected by this court. As stated by Judge Herlong in *Tri-Lift NC, Inc. v. Drive Auto. Indus. Of Am., Inc.*:

> a review of South Carolina case law finds that no court has found that the violation of an industry standard can give rise to a special duty. Therefore, under South Carolina law, the breach of an industry standard is not an exception to the economic loss rule. *See Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993) ("[F]ederal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion."); *see also Bennett v. Ford Motor Co.*, 236 F. Supp. 2d 558, 562-63 (D.S.C. 2002) (Recognizing that expanding South Carolina tort law is "not the role

7

> of this [c]ourt" and thus refusing to recognize an exception to the economic loss rule for a breach of industry standards.).

No. 6:20-cv-02712-HMH, 2021 WL 131017, at *3 (D.S.C. Jan. 13, 2021) (granting plaintiff's motion to dismiss defendant's counterclaim for negligence). *See also Besley v. FCA US, LLC,* Case No. 1:15-cv-01511-JMC, 2016 WL 109887, at * 5 (D.S.C. Jan. 8, 2016) (holding that "authority simply does not exist under South Carolina law to allow an alleged violation of either statutory law or a regulatory standard to serve as an exception to the economic loss rule" and that the "court should not create such an expansion of existing law" and dismissing claims for negligence per se and negligent misrepresentation); *Sandviks v. PhD Fitness, LLC*, No. 1:17-CV-00744-JMC, 2018 WL 1393745, at *4-5 (D.S.C. Mar. 20, 2018) (noting that plaintiff's alleged industry standard exception has already been rejected and dismissing plaintiff's negligent misrepresentation claim pursuant to economic loss doctrine). Thus, this exception does not save Plaintiffs' negligence claims from dismissal.

However, "the South Carolina Supreme Court has found a special relationship where the parties' relationship was one marked by professional duty." *Bahringer v. ADT Sec. Servs., Inc.*, 942 F. Supp. 2d 585, 590 (D.S.C. 2013). The *Bahringer* court provided a helpful list of scenarios in which a special relationship has been found:

> Examples of such special relationships include those between design professionals and general contractors who work under their supervision, [*Tommy L. Griffin Plumbing & Heating Co.*, 463 S.E.2d at 89] (contractors could maintain negligence action against engineer who supervised them), between lawyers and their clients, *Lloyd v. Walters*, 276 S.C. 223, 277 S.E.2d 888, 889 (1981) (corporation could maintain negligence action against lawyer who had a professional duty to protect its interests), and between corporate consultants and a state agency that is the subject of a report prepared by those consultants. *S.C. State Ports Auth. v. Booz–Allen & Hamilton, Inc.*, 346 S.E.2d 324, 326 (1986) (state agency could maintain negligence action against corporate consultant when the consultant

8

> "undertakes to objectively analyze and compare the attributes of commercial competitors for the purpose of giving one a market advantage over the other").

942 F. Supp. 2d 585, 589-90 (D.S.C. 2013).

Here, Plaintiffs cite to *Booz-Allen* to support their assertion that "[c]onsultants certainly have a duty under industry or professional standards to exercise due diligence and provide correct advice . . . . " (ECF No. 11 at 14.) Defendant argues that *Booz-Allen* is inapposite because the consultant's potential tort liability stemmed from the fact that a *non-contracting third party* had been damaged and, without tort claims, the third party would have no means of redress. (ECF No. 12 at 5 (emphasis in original).) But here, Defendant notes, "*both* Plaintiffs entered into a contract" with Defendant and "have a mechanism (a breach of contract claim) to redress their alleged injuries." (*Id.* (emphasis in original).) Upon review, the Court agrees that *Booz-Allen* is distinguishable and finds that it does not stand for the proposition that private consultants are liable in negligence to parties with whom they have contracted to render certain services. Thus, the Court finds that Plaintiffs have failed to point to any professional duty that Defendant owed to them distinct from any contractual duty.

In sum, for the reasons just explained, the Court finds that the allegations in the complaint fail to establish a special relationship giving rise to Defendant's alleged duty to Plaintiffs and that there are no grounds to find a duty on this basis under any of the arguments put forth by Plaintiffs in their opposition memorandum. Accordingly, the Court dismisses Plaintiffs' claims for negligence/gross negligence and negligent misrepresentation based on the economic loss doctrine.[2]

---

[2] As noted at the outset, Defendant additionally argues that Plaintiffs' negligent representation claim is subject to dismissal because it is based on statements about future events. (ECF No. 6 at Section B.)

9

The Court notes that Plaintiffs assert in their opposition memorandum that it is an unsettled question of law in South Carolina whether the economic loss doctrine applies to purely service contracts like the Agreement and, thus, they argue that dismissal is premature. (ECF No. 11 at 9-11.) Plaintiffs rely primarily on *Eaton Corp v. Trane Carolina Plains,* wherein the district court recognized "that the distinction [between a goods and a service contract] could be meaningful" to the question of whether the economic loss doctrine applies to purely service contracts. 350 F. Supp. 2d 699, 703-704 (D.S.C. 2004). However, as noted by Defendant, since the *Eaton* decision, South Carolina courts have consistently applied the economic loss rule to service contracts. (*See* ECF No. 12 at Section A (citing cases).) For example, upon review of whether the appellant failed to identify a duty owed to him outside of the contract, the Court of Appeals of South Carolina recently stated:

> Even assuming Respondents' failure to adequately perform pest control services violated regulations and industry standards, all of these acts relate to the duties Respondents' owed Carroll under the contract. Thus, such claims do not give rise to legal duties owed outside of the contract. Because Respondents' duties arise solely from contract, we hold the circuit court did not err in concluding Carroll was barred from pursing negligence claims against Respondents. Further, Carroll's allegations pertain to a contract to perform termite services and do not involve residential home building. Thus, we hold the exception to the economic loss rule set forth in *Kennedy* does not apply.

---

Plaintiffs strongly oppose this assertion and also request leave to amend their complaint "to conform to the evidence already known to date," which they contend proves that Defendant never had any intention of keeping the promises it made to Plaintiffs. (ECF No. 11 at 2-3, 19, & 19 n.1.) The Court does not address this argument, however, as it finds this claim is subject to dismissal pursuant to the economic loss doctrine. Further, putting aside whether Plaintiffs' request qualifies as a motion for leave to amend, *see* Fed. R. Civ. P. 7(b), 15(a), the Court denies Plaintiffs' request for leave to amend because Plaintiffs' proposed amendment would be futile given that this claim is barred by the economic loss doctrine. *See ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 217 (4th Cir. 2019) (recognizing a court may deny a motion to amend if "amendment would be futile"); *U.S. Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 320 (4th Cir.2010) (holding that the district court did not abuse its discretion in denying leave to amend where the proposed amendment "would have no impact on the outcome of the motion to dismiss").

10

*Carroll v. Isle of Palms Pest Control, Inc.*, 892 S.E.2d 161, 168-69 (Ct. App. 2023), *reh'g denied* (Sept. 21, 2023). Accordingly, the Court finds Plaintiffs' premature argument without merit.

Lastly, Plaintiffs argue that Transcendence cannot be barred from recovering in tort against Defendant because Transcendence was not a party to the Agreement. (ECF No. 11 at Section D.) Plaintiffs state that "only Dr. Sandhu and Ascension are parties to the Consulting Agreement; Transcendence is not a party to it." (*Id.* at 15.) The Court finds this argument rings hollow. As noted by Defendant, not only does this argument conflict with the allegations in the complaint,[3] but also it is not supported by agency law or common sense. (*See* ECF No. 12 at 10.)

## II.  Breach of Fiduciary Duty

Defendant also seeks dismissal of Plaintiffs' breach of fiduciary duty claim, which Plaintiffs assert in the alternative. *F.D.I.C. v. Willetts*, 882 F. Supp. 2d 859, 866 (E.D.N.C. 2012) ("Rule 8 [] provides that a party may plead claims in the alternative or may make two or more statements of a claim either in a single count or separate ones." (citing Fed. R. Civ. P. 8(d)(2))). In South Carolina, "[a] fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *O'Shea v. Lesser*, 416 S.E.2d 629, 631 (S.C. 1992). The relationship cannot be created by the unilateral actions or expectations of one party. *See Steele v. Victory Bank*, 368

---

[3] *See, e.g.,* ECF No. 1 at 3 & 13-14 (heading states: "Ascension Contractually Agreed to Provide Specific Services to Plaintiffs."; alleging that pursuant to the Agreement, "Ascension agreed to provide consulting and operational services to Dr. Sandhu and his drug rehabilitation facility (Transcendence) in exchange for certain fees and costs"; both Plaintiffs assert a breach of contract claim against Defendant and damages flowing from same).

S.E.2d 91, 94 (Ct. App. 1988) (citing 36A C.J.S. Fiduciary (1961)). The question of whether a fiduciary duty exists is a question of law for the court. *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 715 (2003). To survive dismissal, Plaintiffs must plausibly allege "(1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant." *RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (2012) (citations omitted).

Plaintiffs state that they "sought the safety and security of fiduciary management and consultation for this business venture, and . . . delegated consultation and operational management responsibilities to professional consultants, the Defendant." (ECF No. 1 ¶ 72.) They argue that their relationship with Defendant is fiduciary in nature because it "involved a relationship of the utmost trust and confidence because of the parties' relationship, the nature of the investments, and the parties' agreements both express and implied." (*Id*. ¶ 74.)

Here, it is questionable whether Plaintiffs' factual allegations are sufficient, even at this early stage, to support a conclusion that a fiduciary relationship existed between the parties. The Court notes that Plaintiffs provide no case law in their opposition memorandum to support their assertion of a fiduciary relationship between the parties. Upon this Court's independent review, it found no authority to support that a fiduciary relationship exists between the parties to this action. Rather, "South Carolina courts have found relationships exist between lawyers and their clients, between real estate brokers and their clients, between partners in a partnership, between the officers of a corporation and its shareholders, between promoters of a corporation and the corporation, between

a bank and its depositors, etc." *Otts v. Al Jazeera Int'l (USA), Inc.*, No. 2:16-CV-3957-RMG, 2017 WL 11577541, at *2 (D.S.C. Jan. 23, 2017) (citing *Consol. Insured Benefits, Inc. v. Conseco Med. Ins. Co.*, No. 6:03 CV 03211 RBH, 2006 WL 3423891, at *14 (D.S.C. Nov. 27, 2006)). It is undisputed that the parties were involved in an arm's length dealing that mutually benefited their respective business interests. Nonetheless, even if it is assumed that Defendant owed a fiduciary duty to Plaintiffs, according to the economic loss doctrine, Plaintiffs may not bring a fiduciary duty claim where the duty arises from an underlying contract. *Tommy L. Griffin Plumbing & Heating Co.*, 463 S.E.2d at 88 ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.").

Plaintiffs allege that Defendant had a fiduciary duty "of undivided loyalty, absolute faithfulness to Plaintiffs' interests, and a duty to exercise due care and diligence with respect to the consulting services regarding the establishment and operations of comprehensive behavioral health treatment programs." (ECF No. 1 ¶ 75.) Such allegations support that this claim arises out of the duties set forth in the parties' Agreement and relates to contract performance. (*See generally* ECF No. 1-1.) Any duty that Defendant owed Plaintiffs regarding the development and operation of a substance use disorder treatment program is contractually based. As such, because the alleged fiduciary duty is not separate and distinct but part and parcel of Defendant's contractual duties under the Agreement, the Court is persuaded that the South Carolina Supreme Court would rely on the economic loss doctrine to bar this claim.

**CONCLUSION**

Based on the foregoing reasons, the Court **grants** Defendant's partial motion to dismiss (ECF No. 6) and hereby dismisses Plaintiffs' claims for negligence/gross negligence (first cause of action), negligent misrepresentation (third cause of action), and breach of fiduciary duty (fourth cause of action). Further, Plaintiffs' request for leave to amend is **denied**. *See supra* text accompanying note 2. Plaintiffs' breach of contract claim may proceed.

**IT IS SO ORDERED.**

                                            /s/ Bruce Howe Hendricks
                                          United States District Judge

September 18, 2024
Charleston, South Carolina